IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 1333 M STREET, SE, LLC,<br>2701 Tower Oaks Boulevard, Suite 200<br>Rockville, Maryland 20852<br><br>      Plaintiff,<br><br>v.<br><br>MID-ATLANTIC DEVELOPMENT<br>GROUP, LLC,<br>2010 Corporate Ridge, Suite 700<br>McLean, Virginia 22102<br><br>and<br><br>PAUL H. SHAPERO,<br>2230 George C. Marshall Drive<br>Falls Church, Virginia 22043<br><br>      Defendants. | Case No. _____<br><br><u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

For its complaint against Defendants Mid-Atlantic Development Group, LLC ("Mid-Atlantic") and Paul H. Shapero ("Shapero"), Plaintiff 1333 M Street, SE, LLC ("1333 M Street") alleges as follows:

### Parties

1. Plaintiff 1333 M Street is a corporate citizen of the state of Maryland in that it is a limited liability company organized under the laws of the state of Maryland and has its principal place of business at 2701 Tower Oaks Boulevard, Suite 200, Rockville, Maryland, 20852. At all relevant times, 1333 M Street conducted business with Mid-Atlantic and Shapero concerning a property located in the District of Columbia.

2. Defendant Mid-Atlantic is a corporate citizen of the Commonwealth of Virginia in that it is a limited liability company organized under the laws of the Commonwealth of Virginia and has a principal place of business at 2010 Corporate Ridge, Suite 700, McLean, Virginia, 22102. At all relevant times, Mid-Atlantic transacted business with 1333 M Street concerning property located in the District of Columbia and thus knew that its actions were directed to the District of Columbia.

3. Defendant Paul H. Shapero is an individual citizen of the Commonwealth of Virginia and, upon information and belief, resides at 2230 George C. Marshall Drive, Falls Church, Virginia, 22043 and has a principal place of business at 2010 Corporate Ridge, Suite 700, McLean, Virginia, 22102. Shapero is the managing member of Defendant Mid-Atlantic and at all relevant times transacted business with 1333 M Street concerning property located in the District of Columbia and thus knew that his actions were directed to the District of Columbia.

## Jurisdiction and Venue

4. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. §§ 1332 because complete diversity exists (in that the Plaintiff and Defendants are citizens of different states) and the amount in controversy exceeds $75,000. Personal jurisdiction exists over Defendants because this case arises from Defendants' actions concerning property located in the District of Columbia.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

## Nature of the Action

6. This is an action for breach of contract and fraud arising from Shapero's and Mid-Atlantic's deception in luring 1333 M Street into entering into a contract to sell real property in the District of Columbia to Mid-Atlantic that neither Shapero or Mid-Atlantic

2

intended to perform (the "Agreement"). After inducing 1333 M Street to enter into the Agreement with no intention of ever purchasing the Property, Mid-Atlantic breached the Agreement by failing to pay the required $1 million earnest money deposit into escrow as required by the contract (which, subject to certain provisions, was to be released to 1333 M Street prior to closing) and anticipatorily breached its obligation to purchase the property by failing to give 1333 M Street adequate assurances of performance. In addition, Defendant Shapero (both individually and on behalf of Mid-Atlantic) repeatedly and intentionally misrepresented that Mid-Atlantic intended to purchase the Property solely for purposes of inducing 1333 M Street to forbear from declaring a default and re-marketing the Property. Shapero also lied to 1333 M Street by claiming that he had made the required escrow deposit, upon which 1333 M Street relied in continuing to perform pursuant to the Agreement. 1333 M Street thus is entitled to recover both compensatory and punitive damages as a result of Mid-Atlantic's breach of contract and Mid-Atlantic and Shapero's fraud.

## Facts

### A. Mid-Atlantic Induces 1333 M Street to Enter Into A Contract For The Sale And Exchange Of Real Property

7. On September 26, 2005, 1333 M Street and Mid-Atlantic entered into a "Real Estate Sale and Exchange Agreement" (the "Agreement") pursuant to which 1333 M Street agreed to sell, and Mid-Atlantic agreed to purchase, certain real property located at 1333 M Street, S.E. in the District of Columbia (the "Property"). A true and complete copy of the Agreement is attached hereto as Exhibit A and incorporated herein by reference.

8. As recognized in Section 14 of the Agreement, Bill Bryant of Bill Bryant Real Estate, Inc. (collectively, "Bryant") acted as Mid-Atlantic's broker (and thus Mid-Atlantic's and

3

Shapero's agent) in connection with the Agreement at all relevant times during negotiation, execution and times subsequent to execution of the Agreement. Because Bryant was acting as Mid-Atlantic's and Shapero's agent in connection with the Agreement, Mid-Atlantic and Shapero are liable for Bryant's acts within the scope of his agency.

9. Pursuant to Section 3 of the Agreement, Mid-Atlantic agreed to pay 1333 M Street $12,177,300 in consideration for the sale and conveyance of the Property.

10. Section 4 of the Agreement provides as follows:

> 4. <u>Earnest Money</u>. Deposits pursuant to this Section 4 and all interest accrued thereon, if any, shall be collectively called "Earnest Money," and is to be invested by Deposit Escrow Agent in an interest-bearing escrow account in a federally insured institution selected by Purchaser and reasonably acceptable to Seller. Upon the expiration of the Inspection Period, all Earnest Money shall be released from Deposit Escrow Agent and payable to Seller in all events saving only default by Seller, whereas the Deposit shall be returned to Purchaser no later than the scheduled Closing Date.
>
> (a) <u>Within Five Business Days (5) of the Effective Date (as defined in Paragraph 22), Purchaser shall deposit with escrow agent located in the District of Columbia as mutually agreed upon by both parties ("Deposit Escrow Agent") as escrowee, by check or wire transfer in the amount of One Million and No/100 Dollars ($1,000,000.00)</u>(the Deposit"). During the Inspection Period (defined hereinafter) the Deposit shall be fully refundable. Deposit Escrow Agent shall deliver written acknowledgment to Seller, Seller's attorney and Purchaser that an executed copy of this Agreement and the Deposit have been received by and are being held by Deposit Escrow Agent pursuant to the terms of this Agreement. Contemporaneously with its receipt of the Deposit, Deposit Escrow Agent shall provide to Seller an insured closing letter from a national title insurance company reasonably acceptable to Seller, which shall cover Deposit Escrow Agent's acts and omissions as escrow agent under this Agreement and names Purchaser as an additional insured. Seller shall have the option of terminating this Agreement if the full amount of the Initial Deposit is not delivered to Deposit Escrow Agent within five (5) Business Days after the Effective Date.

Exhibit A at Section 4 (emphasis added).

11. As defined in Section 22 of the Agreement, the "Effective Date" of the Agreement was September 29, 2005. Thus, pursuant to Section 4 of the Agreement, Mid-Atlantic was obligated to post $1,000,000 (the "Deposit") with an escrow agent located in the District of Columbia no later than October 6, 2005 (five business days after the Effective Date of the Agreement).

12. Section 10(b)(ix) of the Agreement provides for the release of the Deposit as follows:

> (ix) Within two (2) business days prior to the expiration of the Inspection Period, Seller shall place all Closing documents with the Deposit Escrow Agent (to be named) with delivery of clear title to the Property and with no material changes to the Property at the time of Closing. Seller shall issue a "Note" (satisfactory to Purchaser) to Purchaser for the Deposit Escrow Funds in the amount of the full Deposit ($1,000,000.00) and Deposit will be given to Seller until closing, at which time the Note will be cancelled and marked paid in full and said Deposit will be credited against purchase price.

Exhibit A at Section 10(b)(ix).

13. Section 17(h) of the Agreement, "Attorneys Fees for Enforcement," provides:

> If it becomes necessary for either party to file a suit to enforce this Agreement or any provisions contained herein, the party prevailing in such action shall be entitled to receive from the other party, in addition to all other remedies and damages, its reasonable attorneys fees, costs and expert witness fees and [sic] incurred in such suit.

Exhibit A at Section 17(h).

### B. Mid-Atlantic/Shapero Mis-Represent to 1333 M Street That Mid-Atlantic Had Posted the Deposit and Intends to Complete the Transaction

14. On October 18, 2005, Mid-Atlantic's broker, Bryant, forwarded to 1333 M Street's managing member, Ronald J. Cohen ("Cohen"), an electronic mail message that Shapero had sent to Bryant that reads as follows:

> The $1,000,000 deposit is in escrow at Palm title and my office, to the best of my knowledge had them send the paperwork over to Ron's office last week. I am still in Florida but returning tomorrow. I will make sure Ron has all necessary confirmations for the deposit in escrow. I do plan on completing this deal with him, with the deposit going hard on the 27th.

(emphasis added).

15. This October 18, 2005 e-mail reassured 1333 M Street that Mid-Atlantic had satisfied its obligations pursuant to the Agreement and that Mid-Atlantic intended to complete the transaction.

16. Later on October 18, 2005, in anticipation of the impending expiration of the "Inspection Period" (and thus the beginning of the time that 1333 M Street had the right to withdraw the Deposit in exchange for a promissory note), 1333 M Street's counsel, Michael Hollander, Esquire ("Hollander"), sent an e-mail to Shapero enclosing a proposed form of promissory note and an amendment to the Agreement setting forth further instructions to the escrow agent regarding disposition of the promissory note upon closing (the "Amendment"). Hollander also requested that Mid-Atlantic prepare and present to 1333 M Street the "Closing Documents," required by Section 10(b)(ix) of the Agreement (the "Closing Documents"), which 1333 M Street was required to deposit with the escrow agent two (2) days prior to the expiration of the "Inspection Period."

6

17.     On Friday October 21, 2005, Shapero sent Hollander an e-mail instructing Hollander to prepare so-called "execution" copies of the documents, which Shapero would sign when he meets with Hollander the following week. This e-mail further reassured 1333 M Street that Mid-Atlantic intended to complete the transaction and that the Deposit would be released to 1333 M Street as provided in the Agreement. Based upon Shapero's promises, 1333 M Street continued to perform its contractual obligations and to incur legal fees in connection therewith.

18.     On October 21, 2005, Hollander (on behalf of 1333 M Street) responded to Shapero's e-mail and again requested the Closing Documents prior to the following week because 1333 M Street's managing member (Cohen) would be out of the country and unable to execute the documents at that time. Later that same day, Hollander spoke with Shapero on the telephone, during which conversation Shapero stated that he would meet with Hollander early the following week and give Hollander the Closing Documents so that the Deposit could be released on October 27, 2005. The aforementioned e-mail exchanges and this telephone call again reassured 1333 M Street that all prerequisites to release of the Deposit to 1333 M Street would be completed according to the Agreement and that Shapero intended to carry through with the Agreement.

19.     On October 24, 2005 (Monday), Shapero sent an e-mail to Hollander requesting a meeting with Hollander on October 26, 2005 (Wednesday) to finalize the Closing Documents and to execute the Amendment. Because the Agreement provides that 1333 M Street was required to deliver the Closing Documents at least two (2) days prior to the expiration of the "Inspection Period" (October 27, 2005 - Thursday), Hollander replied to Shapero again requesting copies of the Closing Documents in advance of the proposed meeting so that 1333 M Street could comply with its contractual obligations.

### C. Mid-Atlantic Fails to Satisfy Its Contractual Obligations and the Agreement is Revealed to be a Product of Mid-Atlantic/Shapero's Fraud

20. On October 26, 2005, Shapero left a voicemail message for Hollander stating that he would not attend his scheduled meeting with Hollander (during which the Closing Documents were to be executed). During this message, Shapero stated "I'm thinking that if we can just go on a gentleman's term and take care of everything and get things done Monday." Hollander returned Shapero's call and again requested copies of the Closing Documents and the name of the escrow agent. Shapero never gave 1333 M Street the Closing Documents or the contact information for the escrow agent. However, Shapero's statement that he intended to complete the transaction and sign the necessary documents further led 1333 M Street to believe that Shapero intended to follow through with purchasing the Property.

21. On October 27, 2005 (the day that the Inspection Period expired and upon which the Deposit should have been released to 1333 M Street), Shapero left a voicemail message for Hollander stating that he (Shapero) would contact Palm Beach Title to make arrangements for the release of the escrow. Later on October 27, Shapero left another voicemail message for Hollander stating that the title company would send Hollander the escrow information on the following Monday (October 31, 2005) and that Shapero would work with Hollander to effectuate release of the Deposit into 1333 M Street's account on October 31, 2005 and "get it all done on Monday." Although Shapero's proposed time frame for release of the Deposit to 1333 M Street was later than that provided in the Agreement, 1333 M Street agreed to reasonably work with Shapero and Mid-Atlantic.

22. On October 27, October 31 and November 2, 2005, in response to Hollander's inquires regarding the Deposit and the status of Mid-Atlantic's performance, Shapero left various

8

messages for Hollander during which Shapero explained that he was still out of the area. On October 27, 2005, Shapero stated that "he wanted to get this all resolved" and asked Hollander to call him. On October 31, 2005, Shapero suggested that they reschedule the meeting for Wednesday, November 2, 2005. On November 2, 2005, Shapero stated that he was still away, that he was still trying to contact the title company "regarding the deposit" and that once he did, "we can try to see what we can do to take care of everything."

23. On November 11, 2005, Shapero left a voicemail message for Hollander during which he stated that "my office has gotten in touch with someone at the title company and they're faxing some information up to you." This voicemail message again reassured 1333 M Street that Mid-Atlantic intended to complete the transaction, despite that there were already significant delays in Mid-Atlantic's performance. However, neither Hollander nor anyone else at 1333 M Street received any information from the title company. Upon information and belief, Shapero at all times knew that the Deposit had not been posted and that Mid-Atlantic did not intend to complete the transaction. Shapero's sole purpose in lying to Hollander repeatedly was to induce 1333 M Street into refraining from re-marketing the Property.

24. The market value of the Property as of the January, 2006 closing date is approximately $5 million lower than the $12.177 million contract price.

## COUNT I
### (Fraud/Fraud in the Inducement)(Against Mid-Atlantic and Shapero)

25. 1333 M Street incorporates the allegations in paragraphs 1-24 as if fully set forth herein.

26. Shapero fraudulently induced 1333 M Street into entering into the contract and removing the valuable Property from the market knowing at that time that he did not have the intention or wherewithal to perform.

27. On October 18, 2005, Shapero, through his agent Bill Bryant, further perpetrated his fraud by misrepresenting to 1333 M Street principal Ronald Cohen via an e-mail message received by Cohen in Maryland that "The $1 MM deposit is in escrow at Palm Title."

28. Shapero's misrepresentation was intentional and made with the intent of misleading 1333 M Street into believing Mid-Atlantic would purchase the Property.

29. Shapero's misrepresentation regarding the Deposit was material because compliance with Section 4 of the Agreement was an essential term of the Agreement.

30. 1333 M Street reasonably relied on Shapero's misrepresentation that the Deposit was in escrow by continuing to perform its obligations pursuant to the Agreement and not immediately terminating the Agreement and re-listing the Property for sale.

31. As explained in paragraphs 17 - 23 above, on October 21, 24, 26, 27, 31, and November 2 and 11, 2005, Shapero continued to make material misrepresentations to 1333 M Street that Mid-Atlantic would perform its obligation to purchase the Property pursuant to the Agreement.

32. Upon information and belief, Shapero made these misrepresentations with the intent to mislead 1333 M Street into believing Mid-Atlantic would perform despite that Mid-Atlantic never intended to actually purchase the Property.

33. These misrepresentations induced 1333 M Street to continue to abide by the Agreement, incur legal fees in connection with its performance under the Agreement (and attempts to get adequate further assurances from Mid-Atlantic), refrain from re-marketing the Property, refrain from terminating the Agreement and refrain from filing a lawsuit against Shapero/Mid-Atlantic immediately upon Mid-Atlantic's failure to provide adequate assurances of performance.

34. In addition to Mid-Atlantic's liability for these acts, Shapero is personally liable for his fraudulent misrepresentations because he personally participated in committing this fraud on 1333 M Street.

35. 1333 M Street has been damaged by Shapero's fraud in an amount that is the difference between the purchase price pursuant to the Agreement (that 1333 M Street thought Mid-Atlantic would pay based upon Shapero's/Mid-Atlantic's misrepresentations) and the amount that another purchaser would pay for the Property, which difference is approximately $5 million.

36. Because Shapero made these misrepresentations with the malicious intent to harm 1333 M Street, 1333 M Street is entitled to recover punitive damages for Shapero's conduct.

37. In addition, 1333 M Street is entitled to recover the attorneys fees and costs that it incurs in connection with this suit.

## ALTERNATIVE COUNT II
### (Breach of Contract)(Against Mid-Atlantic)

38. 1333 M Street incorporates the allegations in paragraphs 1-37 as if fully set forth herein.

39. The September 26, 2005 "Real Estate and Exchange Agreement" (the "Agreement") is a valid and enforceable contract between Mid-Atlantic and 1333 M Street.

40. Pursuant to Section 4 of the Agreement, on October 6, 2005 Mid-Atlantic was obligated to pay a $1,000,000 earnest money deposit (the "Deposit") with an escrow agent, which (upon deposit with the escrow agent of the Closing Documents and a Promissory Note) was to be released to 1333 M Street upon expiration of the Inspection Period (October 27, 2005).

41. Mid-Atlantic breached the Agreement by failing to post the Deposit with an escrow agent in accordance with Section 4 of the Agreement.

42. 1333 M Street was damaged by at least the $1,000,000 (plus interest) that it was prevented from obtaining due to Mid-Atlantic's breach of the provision of the Agreement respecting the Deposit.

43. In addition, pursuant to the Agreement, Mid-Atlantic has a duty to purchase the Property for $12,177,300 on January 26, 2005.

44. Despite 1333 M Street's repeated requests for further assurances that Mid-Atlantic will perform its duty to purchase the Property given its breach of the Agreement's provisions respecting the Deposit, Mid-Atlantic has failed to give 1333 M Street such assurances of performance and thus has anticipatorily breached its duty to purchase the Property.

45. 1333 M Street has been damaged by Mid-Atlantic's anticipatory breach by the difference between the purchase price pursuant to the Agreement and the amount that another purchaser would currently pay for the property, which difference is in excess of $5 million.

46. Pursuant to Section 17(h) of the Agreement, 1333 M Street is also entitled to recover the attorney fees, costs and expert witness fees that it incurs in connection with this suit.

WHEREFORE, Plaintiff 1333 M Street, SE, LLC respectfully requests that the Court enter judgment in favor of 1333 M Street and against Mid-Atlantic and Shapero as follows:

A. Actual damages resulting from Mid-Atlantic's breach of the Section 4 of the Agreement, in an amount not less than $1,000,000, plus interest thereon from the date of the breach;

B. Actual damages resulting from Mid-Atlantic's anticipatory breach of its duty to purchase the Property, which is approximately $5 million, but will be more fully determined at trial;

C. Actual damages arising from Shapero's/Mid-Atlantic's fraudulent misrepresentations, which is approximately $5 million, but will be more fully determined at trial;

D. Punitive damages for Shapero and Mid-Atlantic's malicious conduct;

E. Attorneys fees and costs; and

F. Such other relief as the Court deems just and proper.

Dated: January 4, 2006

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: _Ross D. Cooper_ /with permission/ JSD
Ross D. Cooper #429200
11921 Rockville Pike, Third Floor
Rockville, MD 20852
(301) 230-5200
(301) 230-2891 (fax)

*Attorney for Plaintiff 1333 M Street, SE, LLC*

## JURY DEMAND

Plaintiff 1333 M Street, SE, LLC hereby demands a trial by jury on all claims so triable.

_____
Ross D. Cooper /with permission KSD/

*Attorney for Plaintiff 1333 M Street, SE, LLC*