Sep 29 05 06:39a    Steven A. Conrad    5613611394

09-27-2005    03:37pm    From-COHEN COMPANIES    T-408    P

ORIGINAL

## REAL ESTATE SALE AND EXCHANGE AGREEMENT

**THIS REAL ESTATE SALE AND EXCHANGE AGREEMENT** (this "Agreement") is made and entered into as of this 7th day of September 2005, by and between 1333 M Street S.E. LLC ("Seller"), and Mid-Atlantic Development Group LLC. a Virginia limited liability company, and its permitted assigns ("Purchaser").

**WHEREAS**, Seller desires to sell to Purchaser, and Purchaser desires to buy from Seller, the Property (as hereinafter defined);

**NOW, THEREFORE**, for and in consideration of the mutual covenants and agreements contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Seller hereby agree as follows:

1.  **Rules of Construction.**

    (a) The headings contained in this Agreement and in any exhibit annexed hereto are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

    (b) Whenever the words "included," "includes," or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation."

    (c) The words "hereof," "herein," and "hereunder," and words of similar import, when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.

    (d) The definitions contained in this Agreement apply to the singular as well as the plural forms of such terms and to the masculine as well as to the feminine and neuter genders of such terms.

    (e) Unless otherwise stated, any reference in this Agreement to any person shall include its permitted successors and assigns and, in the case of any governmental authority, any person succeeding to its functions and capacities.

    (f) References to "days" shall mean calendar days unless otherwise indicated. References to "business days", whether or not capitalized, shall mean all days, excluding Saturdays, Sundays, and all days observed by the federal government as a legal holiday.

2.  **Purchase and Sale: Exchange.** Upon and subject to the terms of this Agreement, Seller hereby agrees to sell and Purchaser hereby agrees to purchase the following (collectively, the "Property"):

    (a) The fee simple interest of Seller in the real property described in Exhibit A (the "Land");

Sep 29 05 06:39a    Steven A. Conrad    5613611394    p.3

08-27-2005  03:37pm  From-COHEN COMPANIES    +    T-408  P.003/023  F-296

(b)     All improvements, structures, and fixtures located on the Land, and approximately 40,591 square feet of land (243,546 square feet FAR+/-), known as 1333 M Street, S.E., located at the intersection of M Street, S.E., Virginia Avenue, S. E., and 14th Street, S.E., running to Water Street, S.E., Washington, D.C. (the "Property");

(c)     Seller's interest in all easements, hereditaments, rights, privileges and appurtenances belonging to or benefiting Seller and pertaining to the Land and the Improvements, including all of Seller's right, title, and interest in and to (i) adjoining streets, roads, avenues, alleys, and rights-of-way, and (ii) all mineral, gas, oil, and water rights, if any.

The parties acknowledge that it is Seller's intent to pursue an exchange transaction pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code"). Purchaser agrees to cooperate with Seller, but at no cost or risk to Purchaser, to effect such an exchange, by placing the proceeds of Closing with a qualified intermediary pursuant to the provisions of IRC Regulations Section 1.1031(k)-1(g)(4). Seller shall indemnify and hold Purchaser harmless from and against any and all costs, liability or expenses that Purchaser may suffer or incur in connection with such exchange transaction, other than for Purchaser's cooperation as provided above. Additionally, in connection with such exchange, Seller shall have the right to assign its rights (but not its obligations) under this Agreement to such qualified intermediary.

3. Purchase Price. The consideration for the sale and conveyance of the Property acquired hereunder (the "Purchase Price") shall be Twelve Million One Hundred Seventy Seven Thousand Three Hundred Dollars ($12,177,300.00), payable in lawful currency of the United States of America by Purchaser to Seller at Closing (as hereinafter defined) by wire transfer of immediately available funds.

4. Earnest Money. Deposits pursuant to this Section 4 and all interest accrued thereon, if any, shall be collectively called "Earnest Money," and is to be invested by Deposit Escrow Agent in an interest-bearing escrow account in a federally insured institution selected by Purchaser and reasonably acceptable to Seller. Upon the expiration of the Inspection Period, all Earnest Money shall be released from Deposit Escrow Agent and payable to Seller in all events saving only default by Seller, whereas the Deposit shall be returned to Purchaser no later than the scheduled Closing Date.

(a)     Within Five Business Days (5) of the Effective Date (as defined in Paragraph 22), Purchaser shall deposit with escrow agent located in the District of Columbia as mutually agreed upon by both parties ("Deposit Escrow Agent") as escrowee, by check or wire transfer in the amount of One Million and No/100 Dollars ($1,000,000.00) (the "Deposit"). During the Inspection Period (defined hereinafter) the Deposit shall be fully refundable. Deposit Escrow Agent shall deliver written acknowledgment to Seller, Seller's attorney and Purchaser that an executed copy of this Agreement and the Deposit have been received by and are being held by Deposit Escrow Agent pursuant to the terms of this Agreement. Contemporaneously with its receipt of the Deposit, Deposit Escrow Agent shall provide to Seller an insured closing letter from a national title insurance company

2

reasonably acceptable to Seller, which shall cover Deposit Escrow Agent's acts and omissions as escrow agent under this Agreement and names Purchaser as an additional insured. Seller shall have the option of terminating this Agreement if the full amount of the Initial Deposit is not delivered to Deposit Escrow Agent within five (5) Business Days after the Effective Date.

(f)    If Purchaser claims entitlement to the Earnest Money before Closing do to an alleged default by Seller, Purchaser shall deliver written notice to Deposit Escrow Agent and to Seller and its counsel declaring such entitlement and specifying the basis therefor (the "Purchaser's Notice"). Seller shall have five (5) Business Days after such delivery to deliver written notice to Deposit Escrow Agent objecting to release of the Earnest Money to Purchaser and specifying the basis for its objection (the "Seller's Objection Notice"). If Purchaser's alleged default of Seller continues after at least thirty (30) days from written notice of Purchaser, Purchaser shall be entitled to any and all Earnest Money posted with the Deposit Escrow Agent. If Deposit Escrow Agent does not receive the Seller's Objection Notice within five (5) Business Days after Purchaser's delivery of the Purchaser's Notice, Deposit Escrow Agent shall deliver the Earnest Money to Purchaser. If Deposit Escrow Agent receives the Seller's Objection Notice within such five (5) Business Day period, Deposit Escrow Agent shall release the Earnest Money only upon receipt of, and in accordance with, either: (i) written instructions signed by both Seller and Purchaser; or (ii) the final, non-appealable order of a court of competent jurisdiction. In the event of a default by Seller this section shall govern concurrently with Section 12 of this Agreement. Notwithstanding, Purchaser may terminate this Agreement during the Inspection Period in accordance to Section 5(g) of this Agreement.

(g)    If Seller claims entitlement to the Earnest Money before Closing, Seller shall deliver written notice to Deposit Escrow Agent, Purchaser, and Purchaser's attorney declaring such entitlement and specifying the basis therefor (the "Seller's Notice"). Purchaser shall have five (5) Business Days after such delivery to deliver written notice to Deposit Escrow Agent objecting to Seller's retention of the Earnest Money to Seller and specifying the basis for its objection (the "Purchaser's Objection Notice"). If Seller's alleged default of Purchaser continues after at least thirty (30) days from written notice of Seller, Seller shall be entitled to any and all Earnest Money posted with the Deposit Escrow Agent at the time Seller delivered Seller's Notice to Deposit Escrow Agent. If Deposit Escrow Agent does not receive the Purchaser's Objection Notice within five (5) Business Days after Seller's delivery of the Seller's Notice, Deposit Escrow Agent shall deliver promptly the Earnest Money held by Deposit Escrow Agent at the time of Seller's Notice to Seller. If Deposit Escrow Agent receives the Purchaser's Objection Notice within such five (5) Business Day period, Deposit Escrow Agent shall release the Earnest Money held at time of Seller's Notice only upon receipt of, and in accordance with, either: (i) written instructions signed by both Seller and Purchaser; or (ii) the final, non-appealable order of a court of

competent jurisdiction.  In the event of a default by Purchaser, this section shall govern concurrently with Section 13 of this Agreement.

(h)    If the sale of the Property is consummated under this Agreement, the Earnest Money shall be applied to the payment of the Purchase Price at Closing.

(i)    Purchaser's responsibility to keep and maintain the Earnest Money shall not be affected by any failure of Deposit Escrow Agent to maintain the same or by any failure of any financial institution into which Deposit Escrow Agent may deposit the same, and if any such funds are reduced or lost due to failure of Deposit Escrow Agent to maintain the same, or the failure of any such financial institution, Purchaser shall replace such funds by deposit with a substitute deposit escrow agent.

5.    <u>Title Review and Inspection Period</u>.

(a)    INTENTIONALLY DELETED.

(b)    Purchaser shall, at its own expense, order a standard commitment from a title company selected by Purchaser ("Title Company") for owner's title insurance for the Property (the "Commitment").

(c)    During the Inspection Period, Purchaser may obtain, at its own cost and expense and without limitation: an as-built and boundary survey of the Property, engineering, architectural, environmental, title, zoning, survey, and any other studies that Purchaser reasonably deems necessary or desirable to determine the suitability of the Property for its purchase.  Any such survey and studies shall be arranged by Purchaser at no cost or expense to Seller, and no delays with respect to any of such matters shall have the effect of delaying any of the time periods provided for in this Agreement.

(d) If Purchaser fails to terminate this Agreement in accordance with Paragraph 5(g) before the expiration of the Inspection Period, Purchaser shall be deemed to have accepted all title exceptions, liens, and other encumbrances on the Property ("Title Exceptions"), other than Lien Encumbrances (as hereinafter defined), that, as of the date on which the Inspection Period expires, are disclosed or reported in the Commitment and/or the Survey.  The phrase "Permitted Encumbrances" shall mean: (i) all Title Exceptions other than "Lien Encumbrances" (hereinafter defined), (ii) all exceptions to title that have been created or caused to be created by Purchaser or any person whose rights derive by, through, or under Purchaser (but this provision does not authorize Purchaser to create or cause to be created any Title Exceptions); (iii) all laws, ordinances, codes, rules, and regulations of any governmental authority applicable to the Property or the ownership or use thereof; (iv) any liens for real estate taxes, and water and sewer charges, not yet due and payable.

4

Sep 29 05 06:40a    Steven A. Conrad    5613611394    p.6

09-27-2005  03:38pm  From-COHEN COMPANIES    +    T-408  P.006/023  F-296

(e)    Notwithstanding anything in this Agreement to the contrary, Seller shall terminate and release on or before the Closing Date all monetary liens, encumbrances relating thereto, and security interests encumbering the Property, including all unpaid overdue taxes and assessments assessed, levied, or imposed on the Property and all mortgage liens and absolute and/or collateral assignments (but with any liens that have accrued but are not due and payable subject to customary adjustment at Closing among the parties as set forth below) (collectively, the "**Lien Encumbrances**").

(f)    During the period from the Effective Date until Closing, upon reasonable notice to Seller, Purchaser, its employees, agents, and contractors (including any attorneys, surveyors, or environmental consultants), and any other person Purchaser deems necessary to determine the suitability of the Property for the development of the Property, shall have the right to enter on the Property at any time during normal business hours for the purposes of making, at Purchaser's expense, engineering, architectural, environmental, title, zoning, survey, and any other studies that Purchaser reasonably deems necessary or desirable to determine the suitability of the Property for purchase. Any such entry is subject to the rights of tenants of the Property and may be subject to tenant consent, such consent shall no be reasonably withheld. ~~Tenant consent shall not be unreasonably withheld. Tenant consent shall not be unreasonably withheld and if Purchaser is denied access to the Property, for any reason, for a period of time lasting at least a full day, such delay shall not count towards the thirty (30) days of the Inspection Period.~~ Except to the extent caused by the negligence or willful misconduct of Seller or its employees, agents, contractors, invitees, or guests, Purchaser shall indemnify, defend (with counsel reasonably acceptable to Seller), and hold harmless Seller from and against any and all claims, losses, damages, costs and expenses (including without limitation reasonable attorneys' fees) asserted against or incurred by Seller arising out of any bodily injury, death or damage to the Property or any other property attributable to or to the extent arising out of Purchaser's entry on the Property or any act or failure to act of Purchaser or its employees, agents, or contractors in connection with the inspection of the Property pursuant to this Paragraph 5(f).  Purchaser shall keep in force a policy of commercial general liability insurance in the amount of $2,000,000.00, issued by a carrier licensed in the Commonwealth of Virginia and having a Best's rating of at least A-VII, which insures Purchaser's obligations under this Paragraph and names Seller as an additional insured.  The delivery to Seller of a certificate evidencing such insurance shall be a condition to Purchaser's entry upon the Property.

(g)    Purchaser, by written notice to Seller, may terminate this Agreement at any time after the Effective Date and prior to 5:00 p.m. local Washington, D.C. time on ~~the date that is Thirty (30) days after the Effective Date~~ OCT. 27th, 2005 (such ~~thirty (30) day period~~ is herein called the "**Inspection Period**") for any reason in Purchaser's sole and absolute discretion, in which case this Agreement and the obligations of Seller and Purchaser (other than the obligations under Paragraph 5(f)) shall terminate and Deposit Escrow Agent shall return promptly

5

Sep 29 05 06:40a    Steven A. Conrad    5613611394    P.7

09-27-2005  03:39pm  From-COHEN COMPANIES    +    T-408  P.007/023  F-286

the Earnest Money to Purchaser.  If Purchaser does not terminate this Agreement prior to expiration of the Inspection Period, this termination provision shall expire.  Notwithstanding anything to the contrary contained in this Agreement, written notice provided pursuant to this Paragraph 5(g) shall be by telephonic facsimile or sent by a nationally recognized overnight courier service ("Courier Service") for receipt by Seller not later than 5:00 p.m. local Washington, D.C. time on the thirtieth (30th) day of the Inspection Period.

(h)    Except for events of commission or omission by Seller subsequent to the date of the Commitment, Seller shall not be obligated to cure any title, survey, or environmental defects or other objections to any conditions affecting the Property that may be raised by Purchaser.

(i)    INTENTIONALLY DELETED.

(j)    ~~Within two (2) business days prior to the expiration of the Inspection~~ Period, Seller shall place all Closing documents with the ~~Deposit Escrow Agent~~ (to be named) with delivery of clear title to the Property and with no material changes to the Property at the time of ~~Closing~~.  Seller shall issue a "Note" (satisfactory to Purchaser) ~~to Purchaser~~ for the Deposit Escrow Funds in the amount of ~~the full~~ Deposit ($1,000,000.00) to be paid to Purchaser at Closing and ~~shall be deducted from the total Purchase Price at Closing~~.

SEE PAGE 9
#10(b) IV

6.    Zoning.

(a)    Property is zoned "M" with a by-right FAR of 6.0 permitting Office and first floor Retail.  Seller agrees to deliver Property with current zoning in place with described by-right uses at the time of Closing.  Purchaser's obligations under this Agreement are not subject to any matter related to zoning or governmental approvals of Purchaser's intended use of the Property.

7.    Purchaser's Representations, Warranties, and Covenants.  Purchaser represents, warrants, and covenants to and agrees with Seller as follows:

(a)    (i) Purchaser is a Virginia limited liability company, validly existing and in good standing under the laws of the Commonwealth of Virginia; (ii) Purchaser has full right and authority to enter into this Agreement and has been authorized to execute this Agreement and to consummate the transactions contemplated herein; (iii) each of the persons executing this Agreement on Purchaser's behalf is authorized to do so; and (iv) this Agreement constitutes a valid and legally binding obligation of Purchaser, enforceable in accordance with its terms, except to the extent enforceability may be limited by bankruptcy, insolvency, or other laws affecting the rights of creditors generally, or by general principles of equity and the exercise of judicial discretion.

(b)    Purchaser, as soon as possible, but not later than the Closing, shall deliver to Seller and Title Company such documentation as Seller and Title

6

Company may reasonably require to evidence the matters set forth in Clauses 7(a)(i)-(iii).

(c)  Purchaser has not been served with process with respect to any legal or administrative proceedings affecting the transactions contemplated herein. There are no legal or administrative proceedings pending or, to Purchaser's best knowledge, threatened against or affecting Purchaser that, if adversely determined, would limit or impair Purchaser's consummation of the transactions contemplated herein.

(d)  Neither the execution nor the delivery of this Agreement, nor the consummation of the purchase contemplated hereby, nor the fulfillment of or compliance with the terms and conditions hereof conflict with or result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which the Purchaser is a party or by which it is bound.

(e)  Purchaser's representations and warranties in this Section 7 are true and shall be true as of the Closing Date except for any changes that are not materially adverse to Seller and that arise after the date hereof in the ordinary course of Purchaser's business.

8.  Seller's Representations, Warranties and Covenants. Seller represents, warrants, and covenants to and agrees with Purchaser as follows:

(a)  (i) Seller is a validly existing and in good standing under the laws of the District of Columbia (ii) Seller is qualified to do business in the District of Columbia; (iii) Seller has the full right, power and authority to sell and convey the Property to Purchaser and to carry out the obligations of Seller hereunder; (iv) each of the persons executing this Agreement on Seller's behalf is authorized to do so; and (v) this Agreement constitutes a valid and legally binding obligation of Seller, enforceable in accordance with its terms, except to the extent enforceability may be limited by bankruptcy, insolvency, or other laws affecting the rights of creditors generally, or by general principles of equity and the exercise of judicial discretion. Seller, as soon as possible, but not later than the Closing, shall deliver to Purchaser and Title Company such documentation as Purchaser and Title Company may reasonably require to evidence the matters set forth in Clauses 8(a)(i)-(iv).

(b)  Seller has and will convey to Purchaser at Closing good and indefeasible fee simple title to the Property, good of record and in fact, and free and clear of all exceptions, restrictions, encumbrances, encroachments, reservations, and other matters affecting title thereto, except the Permitted Encumbrances. Seller represents and warrants to Purchaser that no other party has any rights in or to the Property, other than those names contained on the current rent roll.

(c)  Seller has not been served with process with respect to any legal or administrative proceedings affecting the Property or the transactions contemplated

7

herein.  There are no legal or administrative proceedings pending or, to Seller's best knowledge, threatened against or affecting Seller that, if adversely determined, would limit or impair Seller's consummation of the transactions contemplated herein.

(d)     Neither the execution nor the delivery of this Agreement, nor the consummation of the sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions hereof: (i) conflict with or result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which the Seller is a party or by which it is bound; (ii) conflict with any restriction to which Seller is subject; or (iii) result in the creation of any charge, lien, or encumbrance against the Property by any person claiming by, through, or under Seller.

(e)     There are no attachments, executions, assignments for the benefit of creditors, or voluntary or involuntary bankruptcy proceedings or other proceedings under any debtor relief laws contemplated by or pending against Seller.

(f)     Seller has no knowledge of any condemnation, eminent domain, or similar proceedings having been instituted or threatened against the Property. The foregoing representation shall not be deemed breached if there is a taking or threatened taking of portions of the property for street widening purposes, installation of public sidewalks or for subway or other underground transportation or utility purposes.

(g)     As of the date hereof, there are no leases or possessory rights of others at or affecting the Property other than the current building tenant leases.

(h)     Seller's representations and warranties in this Section 8 are true and shall be true as of the Closing Date except for any changes that are not materially adverse to Purchaser and that arise after the date hereof in the ordinary course of Seller's business.

9.     <u>Exclusion of Representations and Warranties.</u>  Purchaser shall rely upon its own studies and inspections with respect to the condition of the Property and compliance of the Property with any laws, including without limitation environmental and other laws relating to the condition or use of the Property.  Seller does not make any representations or warranties as to compliance of the Property with any laws, except that Seller has not received any written notice or service of process from any governmental authority seeking to enforce any laws for conditions constituting violations of such laws.

10.     <u>Closing.</u>

(a)     The closing hereunder (the "Closing") shall take place at 10:00 a.m. at the offices of the Deposit Escrow Agent or at such other location in the Washington, D.C. metropolitan area as Purchaser shall specify in writing. **Closing shall occur no later than January 30, 2006.  Seller shall have the right,**

8

by notice to Purchaser, to postpone the Closing Date for a period of up to forty-five (45) days in order to allow Seller time within which to investigate identification of replacement property to qualify as exchange property pursuant to Section 1031 of the Code.

(b)    At the Closing, Seller shall deliver to Purchaser each of the following, all in form and substance mutually satisfactory to Purchaser and Seller in each party's reasonable discretion:

(ii)    a duly executed and acknowledged special warranty deed (the "**Deed**"), in the form attached hereto as Exhibit B, conveying the Property to Purchaser free and clear of any liens or encumbrances except the Permitted Encumbrances;

(iii)    an Assignment and Assumption Agreement (the "**AA Agreement**") in the form attached hereto as Exhibit C, pursuant to which Seller shall assign and Purchaser shall assume the rights and obligations of Seller.

(iv)    a duly executed affidavit, in the form attached hereto as **Exhibit D**, executed by Seller to the effect that Seller is not a foreign person, corporation, or entity under the Code;

(v)    sole and immediate exclusive possession of the Property subject to the Permitted Encumbrances;

(vi)    any transfer tax documentation required to be executed by Seller, together with copies of the most recent tax bills for taxes paid by Seller;

(vii)    certification to Purchaser that Seller's representations and warranties herein are true and correct in all material respects as of the Closing Date except for any changes; and

(viii)    any other documents, certifications, and affidavits reasonably requested by Purchaser or Title Company (including a customary owner's affidavit and gap indemnity agreement).

(ix)    Within two (2) business days prior to the expiration of the Inspection Period, Seller shall place all Closing documents with the Deposit Escrow Agent (to be named) with delivery of clear title to the Property and with no material changes to the Property at the time of Closing. Seller shall issue a "Note" (satisfactory to Purchaser) to Purchaser for the Deposit Escrow Funds in the amount of the full Deposit ($1,000,000.00) ~~to be paid to Purchaser at Closing and shall be deducted from the total Purchase Price at Closing.~~

AND DEPOSIT WILL BE GIVEN TO SELLER UNTIL CLOSING, AT WHICH TIME THE NOTE WILL BE CANCELLED AND PAID IN FULL AND SAID DEPOSIT WILL BE CREDITED AGAINST PURCHASE PRICE.

MARKED

9/29/[...]

Sep 29 05 06:41a    Steven A. Conrad        5613611394            p. 11

09-27-2005  03:39pm  From-COHEN COMPANIES            +            T-406  P.011/023  F-296

(c)    At the Closing, Purchaser shall deliver to Seller each of the following, all in form and substance mutually satisfactory to Purchaser and Seller:

(i)    the Purchase Price;

(ii)    an executed counterpart of the AA Agreement duly executed by Purchaser;

(iii)    certification to Seller that Purchaser's representations and warranties herein are true and correct in all material respects as of the Closing Date except for any changes contemplated by this Agreement; and

(iv)    any other documents, certifications, and affidavits reasonably requested by Seller or Title Company.

(d)    The following shall be prorated and adjusted for the Property as of 11:59 p.m. on the day preceding the Closing Date (the "Proration Time"):

(i)    Ad valorem, similar taxes and assessments, and personal property taxes relating to the Property shall be prorated on an accrual basis between Seller and Purchaser, calculated to the Closing Date. If the actual amount of such taxes and assessments is not known at the time of Closing, such proration shall be made based on estimates and the amount of taxes and assessments that will be due and payable on the Property during the calendar year in which the Closing occurs. The estimated prorated share of such taxes and assessments to be charged to Seller shall be credited against the Purchase Price at Closing. As soon as the actual amount of taxes for such year is known, Seller and Purchaser shall readjust the amount of taxes to be paid by each party with the result that Seller shall pay for those taxes and assessments attributable to the period of time prior to the Closing Date and Purchaser shall pay for those taxes and assessments attributable to the period of time commencing on the Closing Date.

(ii)    All other rents, income and ordinary operating expenses of the Property, including public utility charges, maintenance, management, and other service charges, and all other normal operating charges with respect to the Property shall be prorated at the Closing and appropriate cash adjustments shall be made by Purchaser and Seller. Purchaser and Seller agree to make such post-Closing adjustments as may reasonably be necessary to prorate income and expenses to the extent the same cannot be known with reasonable specificity as of the Proration Time.

(iii)    Seller shall cause all utility meters, if any, to be read at the Closing, and Seller shall pay to Purchaser (or furnish evidence of prior payment) an amount equal to utility charges incurred or accrued up to the reading of such utility meters and not previously paid by Seller, if any. Seller shall be entitled to a credit for whatever deposits Seller may have

10

with any such utility companies to the extent transferred to Purchaser's account.

(e)    Each party shall, upon written request, deliver to the other and to Title Company evidence reasonably satisfactory to such other party that this Agreement and all documents and instruments to be executed and delivered hereunder have been duly authorized, executed, and delivered.

11.    <u>Closing Costs</u>.

(a)    At Closing, Seller shall pay: (i) the District of Columbia Grantor's Tax, any past due real estate or personal property taxes (except as provided in Clause 10(d)(i)), and any assessments, penalties and interests, utility fees, and charges for the Property for the period of time prior to the Closing Date; (ii) the costs of releasing all liens, title exceptions, judgments, and other encumbrances that are to be released and the costs of such releases (including any recordation costs incurred in order to cure any Lien Encumbrances); and (iii) all other expenses stipulated to be paid or incurred by Seller under other provisions of this Agreement.

(b)    At Closing, Purchaser shall pay: (i) the costs for examining the title to the Property and the issuance of a title policy for the Property; (ii) all state and local recordation and transfer taxes other than the Grantor's Tax; (iii) all other expenses stipulated to be paid by Purchaser under other provisions of this Agreement; and (iv) all costs of financing obtained by Purchaser, title insurance premiums, abstractor's fees, surveys and related items.

(c)    The parties shall pay such customary costs and expenses charged to each of them by Title Company for its Closing services. Other costs, charges, and expenses shall be paid as provided in this Agreement, or in the absence of such provision, in accordance with local law or customs. Each party shall pay its own attorneys' fees.

12.    <u>Seller's Default</u>. If Seller fails to consummate this Agreement for any reason, except Purchaser's default or termination of this Agreement by Seller or Purchaser pursuant to the provisions hereof, Purchaser, as Purchaser's sole and exclusive remedy hereunder, may either (i) terminate this Agreement by written notice thereof delivered to Seller on or before the Closing Date, (ii) have its Deposit returned and/or (iii) avail itself of any legal and/or equitable rights and remedies available to Purchaser by law, including but not limited to the right to enforce specific performance of this Agreement. In the event of termination of this Agreement by Purchaser pursuant to the terms and provisions of this Paragraph 12, the parties shall have no further right or obligation hereunder and the Earnest Money shall be returned to Purchaser.

13.    <u>Purchaser's Default</u>. If Purchaser fails to consummate this Agreement for any reason after the expiration of the Inspection Period, except Seller's default or the termination of this Agreement by Seller or Purchaser pursuant to the provisions hereof, Seller shall be entitled to receive the Earnest Money held by Deposit Escrow Agent at

time of default, in accordance to Paragraph 4(g) of this Agreement, as liquidated damages and Seller's sole remedy, it being agreed that Seller's damages for a default by Purchaser are difficult or impossible to calculate and that the amount of the Earnest Money held by Deposit Escrow Agent at time of default is a reasonable estimate of Seller's damages. Seller expressly waives its rights to specific performance. In such event of default by Purchaser that continues at least thirty (30) days after Seller's Notice, at the direction of Seller the Earnest Money held by Deposit Escrow Agent at time of default shall be forthwith paid to Seller by the Title Company upon receipt of written notice from Seller that Purchaser has defaulted under this Agreement. Purchaser agrees to take all such actions and execute and deliver all such documents necessary or appropriate to effect such payment, in which event Purchaser shall have no further liability hereunder. Attendance at Closing by either party shall have no effect on the agreement by the parties as to the payment of the Earnest Money as liquidated damages.

14.    Commissions. Seller and Purchaser represent and warrant to each other that they have dealt with no brokers or finders in connection with the sale of the Property except for Bill Bryant Real Estate, Inc. ("Purchaser's Broker"). At Closing, Purchaser shall pay Purchasers Brokers their fees or other compensation pursuant to separate agreements between Purchaser and Purchaser's Brokers, and Seller shall have no responsibility therefor. Seller and Purchaser represent and warrant to each other that no other brokerage fee or real estate commission is or shall be due or owing in connection with this transaction, and Seller and Purchaser hereby agree to indemnify, defend (with counsel reasonably acceptable to the indemnitee), and hold harmless the other from any and all loss, costs, or damage (including reasonable attorneys' fees and expenses, but excluding consequential, special or punitive damages) arising out of any claims of any broker or agent so claiming based on action or alleged action of the indemnifying party. This Paragraph 14 shall survive Closing and shall not be deemed merged into the deed of conveyance.

15.    Taking, Damage and Destruction.

(a)  Seller agrees to maintain at its cost all insurance currently in force covering the Property until the Closing Date. In the event of damage by fire or other casualty to the Property which cannot be repaired prior to the Closing Date and which requires more than Two Million Dollars ($2,000,000.00) to be expended to repair or restore the Property, Purchaser shall have the option of terminating this Agreement by delivering written notice of termination to Seller within five (5) business days after receipt of written notice of such damage, fire or other casualty. If Purchaser elects not to terminate this Agreement, or if the damage cannot be repaired prior to Closing and is less than Two Million Dollars ($2,000,000.00), Seller shall assign to Purchaser any and all claims under any then existing insurance policies with respect to the Property, and Purchaser shall take title to the Property with the assignment of such claim and subject to such destruction and without reduction of the Purchase Price except for any deductible under Seller's insurance and any uninsured damage. If Purchaser elects to terminate this Agreement pursuant to this Paragraph, the parties shall have no further rights and obligations hereunder and the Earnest Money shall be returned to Purchaser.

The risk of loss or damage to the Property shall be upon Seller until recordation of the deed of conveyance, subject to the foregoing provisions with respect to damage less than Two Million Dollars ($2,000,000.00).

(b) Immediately upon obtaining knowledge in writing of the institution of proceedings for the condemnation of the Property or any portion thereof, Seller or Purchaser will notify the other in writing of the pendency of such proceedings. In the event of the condemnation of all or any material portion of the Property or the sale of all or any material portion of the Property in lieu of condemnation prior to the Closing Date, Purchaser shall have the option of terminating this Agreement by delivering written notice of termination to Seller within five (5) business days after receipt of written notice of such condemnation. In the event that Purchaser elects not to terminate this Agreement, Seller shall assign to Purchaser any and all claims for the proceeds of such condemnation or sale with respect to the Property, and Purchaser shall take title to the Property with the assignment of such proceeds and subject to such condemnation and without reduction in the Purchase Price. If Purchaser elects to terminate this Agreement pursuant to this Paragraph, the parties shall have no further rights and obligations hereunder and the Earnest Money shall be returned to Purchaser. For purposes of this Paragraph, the term "material" shall not include any taking for street widening purposes, installation of public sidewalks, or for subway or other underground transportation or utility purposes.

16.    Notices. All notices required or permitted hereunder shall be in writing and shall be deemed to be delivered when actually received, delivered by telephonic facsimile, or sent by Courier Service, addressed to Seller or Purchaser, as the case may be, as follows:

If to Purchaser:          Mid-Atlantic Development Group LLC
                          2010 Corporate Ridge, Suite 700
                          McLean, VA 22102
                          Attn: Paul H. Shapero, Managing Member
                          Phone: (703) 749-0559
                          Fax:   (703) 208-9125/ (703) 749-7716
                          Email: midatlanticprop@aol.com

If to Seller:             1333 M Street, S.E. LLC
                          c/o Ronald Cohen ~~Investments~~
                          2701 Tower Oaks Boulevard
                          Rockville, MD 20852

If to Deposit             TBD
Escrow Agent:

Either party hereto may change the address for notice specified above by giving the other party three (3) Business Days advance written notice of such change of address in accordance with the foregoing notice requirements.

17.    <u>Miscellaneous</u>.

(a)    <u>Construction and Interpretation</u>. This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Virginia.

(b)    <u>Amendment and Waiver</u>. This Agreement may not be modified or amended, except by an agreement in writing signed by Seller and Purchaser. The parties may waive any of the conditions contained herein or any of the obligations of the other party hereunder, but any such waiver shall be effective only if in writing and signed by the party waiving such condition or obligation. No delay or omission in the exercise of any right or remedy accruing to Seller or Purchaser upon any breach under this Agreement shall impair such right or remedy or be construed as a waiver of any such breach theretofore or thereafter occurring. The waiver by Seller or Purchaser of any breach of any term, covenant, or condition herein shall not be deemed to be a waiver of any other breach, or of a subsequent breach of the same or any other term, covenant, or condition herein contained. All rights, powers, options, or remedies afforded to Seller or Purchaser either hereunder or by law shall be cumulative and not alternative, and the exercise of one right, power, option, or remedy shall not bar other rights, powers, options, or remedies allowed herein or by law, unless expressly provided to the contrary herein.

(c)    <u>Assignment</u>. Purchaser may at any time assign or transfer this Agreement, or any interest therein to any affiliate of Purchaser, and Seller shall recognize and be bound to any such affiliate assignee upon receipt of notice of such assignment or transfer specifying the name and address of the assignee or transferee. No such assignment or transfer shall relieve Purchaser of its liabilities and obligations under this Agreement. For purposes of this Paragraph, the term "affiliate" shall mean any entity in which Purchaser or the members of Purchaser have at least fifty-one (51%) effective voting control.

(d)    <u>Binding Terms</u>. This Agreement and the terms and provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their legal representatives, successors and assigns.

(e)    <u>Entire Agreement</u>. The parties hereto expressly acknowledge and agree that, with regard to the Property, the subject matter of this Agreement, and the transactions contemplated herein: (i) there are no oral agreements between the parties hereto; and (ii) this Agreement, including the defined terms and all exhibits and addenda, if any, attached hereto (A) embodies the final and complete agreement between the parties, (B) supersedes all prior and contemporaneous negotiations, offers, proposals, agreements, commitments, promises, acts, conduct, course of dealing, representations, statements, assurances, and

14

understandings, whether oral or written, and (C) may not be varied or contradicted by evidence of any such prior or contemporaneous matter or by evidence of any subsequent oral agreement of the parties hereto. By the execution of this Agreement, Seller and Purchaser each release each other from any obligation to the other arising from any prior discussions pertaining to the Property.

(f)    Acknowledgement of Cancellation. Upon a termination or cancellation of this Agreement, both parties covenant and agree to execute such documents as either party may reasonably request to evidence such termination.

(g)    Time. The parties hereto hereby agree that time shall be of the essence with respect to the performance of this Agreement.

(h)    Attorneys' Fees for Enforcement. If it becomes necessary for either party to file a suit to enforce this Agreement or any provision contained herein, the party prevailing in such action shall be entitled to receive from the other party, in addition to all other remedies or damages, its reasonable attorneys' fees, costs and expert witness fees and incurred in such suit.

(i)    Schedules and Exhibits. The following exhibits are attached to this Agreement:

Exhibit A:        Legal Description

Exhibit B:        Deed

Exhibit C:        Assignment & Assumption Agreement

(j)    Further Assurances. In addition to the acts and deeds recited herein and contemplated to be performed, executed, and/or delivered by the parties, each party shall perform, execute, and/or deliver or cause to be performed, executed, and/or delivered at the Closing or after the Closing any and all further acts, deeds, and assurances as Seller, Purchaser, or Title Company may reasonably require to consummate the transaction contemplated herein. The provisions of this Paragraph shall survive Closing.

(k)    Interpretation of Contract. The parties acknowledge that each party and its counsel have reviewed and revised this Agreement, and the parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any addenda or exhibits hereto.

(l)    Severability. If any covenant or provision hereof is determined by a court of competent jurisdiction to be void or unenforceable in whole or in part, it shall not, subject to the discretion of such court, be deemed to affect or impair the validity of any other covenant or provision, each of which is hereby declared to be separate and distinct. If any provision of this Agreement is so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is

Sep 29 05 06:43a    Steven A. Conrad    5613611394    p.17

08-27-2005  03:41pm  From-COHEN COMPANIES    +    T-408  P.017/023  F-296

enforceable. If any provision of this Agreement is declared invalid or unenforceable for any reason other than overbreadth, the offending provision will be modified so as to maintain the essential benefits of the bargain between the parties hereto to the maximum extent possible, consistent with law and public policy.

(m)    Multiple Counterparts. This Agreement may be executed in several original or telefaxed counterparts, which shall be treated as originals for all purposes, and all so executed shall constitute one agreement, binding on all of the parties hereto, notwithstanding that all the parties may not be signatories to the original or the same counterpart. Any such original or telefaxed counterpart shall be admissible into evidence as an original hereof against the person or entity who or which executed it; provided, however, that a full and complete set of any such original or telefaxed signature pages or copies thereof evidencing the intended execution of this Agreement by all parties hereto must be produced if this Agreement is to be considered binding upon all parties hereto.

(n)    Limitation of Liability. No present or future partner, director, officer, shareholder, employee, advisor, agent, attorney, asset manager, or sub-asset manager of or in Seller or Purchaser shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or in connection with the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and each of Purchaser and Seller and their respective successors and assigns and, without limitation, all other persons and entities, shall look solely to the other party's assets for the payment of any claim or for any performance. The limitations of liability contained in this Paragraph 17(n) are in addition to, and not in limitation of, any limitation on liability applicable to Seller and Purchaser provided in any other provision of this Agreement or by law or by any other contract, agreement, or instrument.

18.    Survival and Post-Closing Remedies. The warranties, representations, agreements, covenants, indemnities, and authorizations made herein shall survive the Closing for a period of one (1) year and shall not be deemed merged into the deed of conveyance, except that the provisions of Paragraph 5(f) hereof shall survive Closing or any termination of this Agreement for a period of three (3) years.

19.    No Third Party Rights. No term or provision of this Agreement is intended to or shall be for the benefit of any person not a party hereto (including Deposit Escrow Agent, Title Company, and Seller's Broker), and no such other person shall have any right or cause of action hereunder.

20.    WAIVER OF JURY TRIAL. PURCHASER AND SELLER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ONE OR IN RESPECT OF ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

21.    <u>Deposit Escrow Agent</u>.

(a)    Seller and Purchaser hereby covenant and agree that in performing any of its duties as escrow agent of the Earnest Money under this Agreement, Deposit Escrow Agent:

(i)    Shall not be liable to Purchaser or Seller for any losses, costs, or damages that either party may suffer and/or incur as a result of Deposit Escrow Agent's actions or omissions as escrow agent of the Earnest Money hereunder except for any losses, costs, or damages attributable to Deposit Escrow Agent's willful misconduct or negligence;

(ii)    Shall not incur any liability with respect to: (i) any action that Deposit Escrow Agent takes or omits to take in good faith; or (ii) any action Deposit Escrow Agent takes or omits to take in reliance upon any document, including, without limitation, any written notice of instruction provided for in this Agreement, not only as to its due execution and the validity and effectiveness of its provisions, but also to the truth and accuracy of any information contained therein, which Deposit Escrow Agent in good faith believes to be genuine, to have been signed or presented by a proper person or persons, and to conform with the provisions of this Agreement; and

(iii)    Shall be entitled, in the event of a dispute between any of the parties hereto sufficient in the sole and absolute discretion of Deposit Escrow Agent to justify its doing so, to tender unto the registry or custody of any court of competent jurisdiction all money or property in its hands held under the terms of this Agreement, together with such legal pleading as it deems appropriate, and thereupon be discharged.

(b)    Except to the extent attributable to the negligence or willful misconduct of Deposit Escrow Agent or its employees, agents, or representatives, Seller and Purchaser hereby agree to indemnify, defend, and hold harmless Deposit Escrow Agent from and against any and all loss, costs, or damage (including reasonable attorneys' fees and expenses, but excluding consequential, special or punitive damages) arising out of Deposit Escrow Agent serving as escrow agent of the Earnest Money.

22.    <u>Effective Date</u>. The "Effective Date" shall be the date on which the last to sign of Purchaser and Seller has signed this Agreement.

*(Signature Page Follows)*

17

**IN WITNESS WHEREOF**, the parties have executed this Real Estate Sale and Exchange Agreement as of the Effective Date.

**PURCHASER:**

Mid-Atlantic Development Group LLC,
a Virginia limited liability company

By: _Paul H. Shapero_

Name: Paul H. Shapero
Title:  Managing Member

Date: ~~9/26/05~~                    Pres
                                     9/29/05

**SELLER:**

1333 M Street, S.E. LLC

By: _____
Name: RONALD J. COHEN
Title:  MANAGER

Date: September 27th/2005

18

This Agreement has been received by the undersigned this _____ day of September 2005. Deposit Escrow Agent joins in the execution hereof (and shall immediately deliver this acknowledgement to Purchaser and Seller) to evidence that this Agreement has been fully executed by Purchaser and Seller and to evidence Deposit Escrow Agent's acknowledgment hereto, its receipt of the Earnest Money, and its agreement to perform its obligations hereunder pursuant to Section 21.

**DEPOSIT ESCROW AGENT:**


By: _____
Name: _____
Title: _____

**Exhibit A**

**Legal Description**

09-27-2005  03:41pm  From-COHEN COMPANIES                        T-408  P.023/023  F-296

## Exhibit C

Assignment and Assumption Agreement